OPINION
This is an appeal from the Lake County Court of Common Pleas. Appellant, Ernest Davis, filed a petition for postconviction relief and a motion for a new trial, which the lower court overruled without a hearing in a judgment entry filed on March 30, 1999.
On March 22, 1996, appellant was indicted by the Lake County Grand Jury on seven counts for conduct that occurred on January 13, 1996. The counts consisted of the following: (1) Count One, aggravated robbery, in violation of R.C. 2911.01, an aggravated felony of the first degree; (2) Counts Two and Three, kidnapping, in violation of R.C. 2905.01, which are each aggravated felonies of the first degree; (3) Counts Four and Five, felonious assault, in violation of R.C. 2903.11, which are aggravated felonies of the second degree; (4) Count Six, aggravated burglary, in violation of R.C. 2911.11, an aggravated felony of the first degree; and (5) Count Seven, having weapons while under disability, in violation of R.C. 2923.13, a felony of the fourth degree. Each count contained a firearms specification. Finally, the indictment named two brothers, Joshua Freshwater ("Joshua") and Jason Freshwater ("Jason"), as the alleged victims in this case.
A jury trial on the indictment commenced on June 3, 1996. At trial, the facts showed that on January 13, 1996, appellant attempted to collect a $2,000 drug debt owed to him by Jason. Appellant arrived at the Freshwater residence in Mentor to discuss the payment of the debt. Then, Joshua and Jason left with appellant to go for a drive. According to appellee, the State of Ohio, the evidence submitted to it indicated that Joshua and Jason were deceived with respect to appellant's intentions when they left with him.
Appellant then took Joshua and Jason to an empty apartment in Cleveland where they were beaten for approximately two hours by six unidentified males. Appellant apparently also punched Jason. After the beating, Joshua and Jason were driven around by appellant and Melvin Alford ("Alford"). While in the car, Alford beat them, brandished a .25 caliber firearm, and used stun guns to shock them repeatedly. Appellant was driving while these things occurred. Appellant further was alleged to have shocked Jason with a stun gun.
Eventually, Jason and Joshua were taken to a U-Haul vendor in Cleveland and caused to rent a U-Haul moving truck in Jason's name. The group then drove to Joshua and Jason's home, at which time, Alford and another of appellant's companions began removing items from the house. When items began being taken, Joshua loaded a shotgun and ordered one of appellant's companions to leave the premises. Appellant then attempted to disarm Joshua, causing a struggle to ensue. Appellant then implored Joshua not to shoot him, and Joshua unloaded the gun. At that juncture, Alford started firing shots with his .25 caliber weapon. The police were telephoned and appellant ran from the residence with the Freshwaters' unloaded shotgun.
After a jury trial, appellant was found guilty, as journalized on June 19, 1996, and sentenced on one count of kidnapping, two counts of felonious assault, one count of aggravated burglary, and one count of having a weapon while under disability. Appellant was further convicted and sentenced on two firearm specifications, one for each count of felonious assault.
After being sentenced, appellant perfected a timely appeal to this Court. In State v. Davis (May 22, 1998), Lake App. No. 96-L-167, unreported, at 17-19, 1998 WL 386190 ("Davis I"), this Court concluded that appellant's tenth (of eleven) assignment of error was meritorious, while the remaining ten assigned errors were determined to be without merit. Consequently, the judgment of the trial court was affirmed in part, reversed in part, and remanded to the lower court in order that it vacate one of appellant's firearm specification sentences. Id. at 19.
In June 1998, appellant filed an appeal of our decision with the Supreme Court of Ohio. A cross appeal was also filed in June 1998. On September 17, 1998, the Ohio Supreme Court denied appellant leave to appeal and dismissed the appeal and cross appeal. On October 20, 1998, the lower court complied with our remand and held that the three-year sentence on the firearm specification contained in Count Four of the indictment was vacated.
On January 4, 1999, appellant filed a petition for postconviction relief with the trial court. The petition also advanced a motion for a new trial in the alternative. The basis for the new action by appellant arose from Jason's affidavit, dated December 8, 1998, alleging certain recantations of his prior trial testimony. In that affidavit, Jason stated that: (1) he had walked on the ice-covered lake of his own volition as payment for part of the money owed to appellant; (2) he did not see who was hitting him in the room, whereas he had previously testified that he saw appellant throw punches at him; (3) appellant had not said to him that it was his fault that he got beaten-up, rather, appellant only said that he should do what Alford told him in order that he not be hurt anymore; (4) appellant shocked him with a stun gun only because Alford put a gun up to him and ordered him to do so with threats of force for noncompliance; and (5) he did not tell the truth when he testified that he attempted to gain the attention of the security guard in the U-Haul store, since the fact is that he did not feel threatened while in appellant's presence.
In a judgment entry filed on March 30, 1999, the Lake County Court of Common Pleas denied appellant's petition for postconviction relief and motion for a new trial. Appellant has now timely filed the instant appeal, raising the following as error:
 "[1.] [Appellant] was denied due process of law when he was denied post-conviction relief when his conviction was based on perjured testimony.
 "[2.] [Appellant] was denied due process of law when the court ruled that any misconduct by the police could not be imputed to the prosecutor.
 "[3.] [Appellant] was denied due process of law when the court limited consideration of any perjured statements because they were unknown to the prosecutor."
In the first assignment of error, appellant avers that he was entitled to a new trial because his conviction was based on the perjured testimony of Jason, as evidenced by his recantation filed with the trial court on December 8, 1998. Under appellant's argument, a new trial is required because Jason's testimony casts doubt on his credibility, which calls into question the validity of his conviction.
In Ohio, postconviction relief is available only to redress constitutional violations. State v. Walden (1984),19 Ohio App.3d 141, 146; State v. Cohen (June 11, 1999), Lake App. No. 97-L-311, unreported, at 4, 1999 WL 417967. When the violation upon which a petitioner relies to establish his right to relief is not of a constitutional dimension, the postconviction petition must fail. State v.Powell (1993), 90 Ohio App.3d 260, 264; Cohen, supra, unreported, at 4. Moreover, "`a conviction based upon perjured testimony does not implicate constitutional rights absent a showing that the state [sic] knew of the perjury,' `should have known of the perjury,' or `allow(ed) it to go uncorrected when it appear(ed).'" Cohen, supra, unreported, at 4, quoting State v. Kimble (Sept. 22, 1988), Cuyahoga App. No. 54154, unreported. Finally, when a petition for postconviction relief, based on the concept of perjured testimony, does not allege that the State knew or should have known of the perjured testimony, or that the State allowed it to go uncorrected when it appeared, then the petition must be denied because a constitutional violation has not been alleged. Id. at 4.
In his first assignment of error, appellant fails to demonstrate or even allege that the appellee knew or should have known of Jason's alleged perjured testimony, or that appellee allowed the perjury to go uncorrected when it appeared. Thus, under the rule of law established by this Court in Cohen, appellant's first assignment of error must be overruled regarding that issue. The postconviction petition must also be overruled on the basis that Jason's "recantation" dated December 8, 1998, did not fully contradict his trial testimony.
Indeed, in his affidavit, Jason first states that he was not telling the truth when he previously testified that he walked out onto the ice because he was uncomfortable in the car. He claims that he walked out onto the ice because he felt like he owed appellant for what he had done and so he and his brother volunteered to walk on the ice to pay part of a payment owed. This is not a contradiction of any trial testimony. At trial, Jason stated that he did not know who suggested the walk on the ice. Additionally, Joshua actually testified that appellant did not force them to walk on the ice. Nevertheless, Joshua and Jason did walk on the ice.
Jason further states in his affidavit that he did not see appellant hit him during the episode in which he was beaten because he was covering his face for protection. This does not contradict his testimony that he was beaten and that appellant was there. Also, the trial testimony provided by Jason concerned the general manner in which his attack occurred. He stated at trial that, "punches and kicks were getting thrown at me from all sides. I don't really know what was happening at the time." In addition to his brother's testimony, Joshua testified that appellant did not strike him or his brother. Thus, this portion of appellant's recantation would not have materially affected the outcome of the trial.
In his third statement in the recantation affidavit, Jason claims that appellant did not tell him that it was his fault that he got beaten-up. Instead, Jason states that appellant merely told him to obey the co-defendant, Alford, to prevent getting hurt anymore. This part of the recantation does not affect the substance of the charges or actions which occurred. In fact, it shows that appellant was involved in the incident, for which the jury could draw its own conclusions based on the other evidence.
Jason additionally states in his affidavit that although he previously testified that appellant had shocked him with a stun gun, the reality is that appellant shocked him because Alford had put a gun to appellant's chest and ordered him to do it, or he would get hurt. However, even with this recantation, the fact still remains that appellant drove the vehicle while Alford stunned Joshua and Jason. Moreover, at trial, Joshua testified that Alford waived a gun in appellant's face at times during the events that day. Also, the jury already was aware that appellant took a lesser role in attacking Joshua and Jason with the stun gun. Therefore, appellant has not shown how this new evidence would have materially affected the outcome of the trial.
Finally, Jason claims that he did not try to contact the security guard in the U-Haul store while there with appellant. He further states in his recantation that he never felt threatened by appellant, but was fearful of Alford. This recantation does not contradict his testimony at trial, when he stated that he was fearful at that time because Joshua was then being held by Alford at gunpoint near the vehicle. Whether Jason did or did not try to contact the security guard would also not serve to materially affect the outcome of the trial.
Additionally, under the first assignment of error, appellant argues that he is entitled to a new trial under Crim.R. 33(A).
Crim.R. 33(A)(6) permits an appellant to file a motion for a new trial, "[w]hen new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial." Motions for a new trial on account of newly discovered evidence must be filed within one hundred twenty days after the day on which the verdict was rendered, unless the defendant demonstrates by clear and convincing proof that he or she was "unavoidably prevented" from discovering the evidence upon which he or she must rely. Crim.R. 33(B). When a defendant attempts to prove that he or she was unavoidably prevented from discovering the evidence, a motion for a new trial will be permitted to be filed only after the trial court enters an order finding that the defendant was unavoidably prevented from discovering the evidence within the one hundred twenty day period. Crim.R. 33(B). When the trial court puts on such an order, a defendant must file the motion for a new trial within seven days of the entry. Crim.R. 33(B).
The record reveals that the jury verdict finding appellant guilty was journalized by the lower court on June 19, 1996. The record further demonstrates that even if the petition for postconviction relief is also construed as a motion for a new trial, the motion/petition was not filed until January 4, 1999, which is far outside the one hundred twenty day period outlined in Crim.R. 33(B). Moreover, appellant has not argued or shown in his brief, nor have we discovered, any order by the trial court finding that appellant was unavoidably prevented from discovering the evidence within the one hundred twenty day period. Thus, if the instant appeal is construed as a motion for a new trial, it must fail for untimeliness. Therefore, appellant's first assignment of error is without merit.
Due to the interconnectedness of appellant's second and third assignments of error, they will be addressed in a consolidated fashion.
In the second assigned error, appellant contends that he was denied his due process of law because the misconduct by the police, in knowing that Jason's testimony was perjured, is imputed to the prosecution. In the third assigned error, appellant states that the trial court erred in holding that information known by police is not imputed to the prosecution, and that the police forced him to give certain statements.
Assuming arguendo, that Jason's testimony was perjured, appellant's briefing in this assignment of error completely fails to proffer one piece of concrete evidence indicating that the police knew that Jason's testimony was perjured. Instead, appellant merely advances baseless, self-serving, conclusory statements that the police knew of the perjured testimony. Additionally, there is no evidence that the police forced him into making some of his statements, which would be in violation of his due process rights. There is no evidence that the police threatened him with perjury if he failed to testify as he did. Also, nothing in Jason's recantation demonstrates that either the police or the prosecution knew that he intended to testify falsely. Thus, appellant's second and third assignments of error are not well-taken.
For the foregoing reasons, appellant's assignments of error are without merit and the judgment of the Lake County Court of Common Pleas is affirmed.
 _______________________________ DONALD R. FORD, PRESIDING JUDGE
NADER, J., O'NEILL, J. concur.